OPINION
{¶ 1} Who should care for five-month old T.U.? This was the question before a Montgomery County Juvenile Court magistrate at the custody hearing. Said the magistrate,
 {¶ 2} "The reason why we're here is because mom and dad have domestic violence issues. Mom and dad choose to do drugs. That's why we're here. *Page 2 
 {¶ 3} "We're not here because the world is unfair. We're here because two adults have decided to have a child, and they're not-they are participating in conduct which is not appropriate to have a child in their home. That is what the concern is. So, it is as much as the evidence bears out that temporary custody to the maternal [great] grandparents is in the best interest of the child." (Tr. 56).
 {¶ 4} Appellant, T.U.'s father, contends this decision is wrong for two reasons. First, the great-grandparents had not filed a motion that requests legal custody, so the governing statute does not permit the magistrate to place T.U. with them. And second, the decision is contrary to the manifest weight of the evidence presented at the hearing. We will affirm.
 {¶ 5} In July 2007 Montgomery County Children's Services (MCCS) began investigating whether T.U.'s parents were neglecting him. The previous month an off-duty police officer had watched T.U.'s father grab T.U.'s mother by the neck and force her into a vehicle. The father said he was angry with her because she had been out all night drinking. The two had lived together until he kicked her out, but T.U. had been living with his great-grandparents almost continuously since birth. Both parents, MCCS discovered, struggle with domestic violence and substance abuse issues, and neither parent holds regular, gainful employment or has an alternative source of income. Indeed, they both admit to drug use, and the father has been convicted on two drug-related charges.
 {¶ 6} MCCS concluded they were neglecting their son, so it filed a dependency complaint. The complaint alleges neither parent is currently capable of providing for T.U.'s basic needs, and it asks the court to commit T.U. to the temporary custody of his maternal great grandparents. In response, the magistrate appointed a Guardian Ad Litem (GAL), who would represent T.U.'s interests. *Page 3 
 {¶ 7} At the hearing, the magistrate found that T.U. was a dependent child, meaning his current situation places him at risk. The magistrate then heard testimony about where he should go. The GAL told the magistrate that he did not think T.U. should be with either parent. He believed it was in T.U.'s best interest to commit T.U. to the temporary custody of his great-grandparents. They had regularly cared for T.U. and were willing to do so now, and a positive home-study and a negative criminal background check found them qualified. While there was some concern about racist statements made by them in the past directed at the father, who is black, they were the only proposed custodians. After the father filed objections, the trial court adopted the magistrate's order. This appeal followed.
 {¶ 8} Before reviewing the assigned errors, we briefly consider the threshold question of whether a temporary custody order, like the one here, is final and appealable. In the case of In re Murray (1990),52 Ohio St.3d 155, 158, 556 N.E.2d 1169, the Ohio Supreme Court held that an order of temporary custody that emanates from an adjudication of dependency, neglect, or abuse is final and appealable under R.C. 2501.02
and R.C. 2505.02. Here, the magistrate adjudicated T.U. dependent before committing him to the temporary custody of his great-grandparents. Therefore, we may hear this appeal of the custody order.
 {¶ 9} The first assignment of error:
 {¶ 10} "JUDGE NICK KUNTZ'S DECISION SHOULD BE OVERRULED SINCE THE JUVENILE COURT DID NOT HAVE JURISDICTION TO ISSUE A CUSTODY ORDER GRANTING TEMPORARY LEGAL CUSTODY TO THE MATERNAL [GREAT] GRANDPARENTS IN THIS MATTER DUE TO A MOTION NOT BEING FILED BY ANY MATERNAL RELATIVE PRIOR TO THE DISPOSITIONAL HEARING ON OCTOBER 24, 2007." *Page 4 
 {¶ 11} The statute governing a court's disposition of a dependent child reads, in part, "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court; (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *" R.C. 2151.353(A)(2), (3).
 {¶ 12} The father contends that, because the great-grandparents had not filed a motion, requesting legal custody, before the hearing, paragraph (3) precludes the magistrate from placing T.U. with them. He argued the same to the juvenile court judge. The judge said paragraph (2) controlled the decision, not paragraph (3), because the decision committed T.U. to the temporary custody of the great-grandparents. It did not award them permanent legal custody.
 {¶ 13} The judge is correct. It is clear the magistrate committed T.U. to his great-grandparents only temporarily. One of the magistrate's express findings of fact is, "there is reasonable cause to believe that the child will be reunified with one/both of the parent(s)." Paragraph (3), though, plainly applies only to an award of permanent legal custody, which it makes clear with the requirement that a person identified in a complaint or motion as a proposed legal custodian must sign a statement that contains a provision "[t]hat the person understands that legal custody of the child in question is intended to be permanent in nature * *Page 5 
* *." R.C. 2151.353(A)(3)(b) (Emphasis added.). The father does not dispute the temporary nature of the great-grandparents' custody, and neither does he explain why he believes paragraph (3) should control. Therefore, we overrule the first assignment of error.
 {¶ 14} The second assignment of error:
 {¶ 15} "JUDGE KUNTZ'S DECISION OF GRANTING TEMPORARY CUSTODY TO THE MATERNAL [GREAT] GRANDPARENTS, [H. AND P.S.], SHOULD BE OVERRULED AS BEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} The father contends that, because it is contrary to the manifest weight of the evidence, the decision is an abuse of discretion, that is, "unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. But "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co.v. Foley Const. Co. (1978), 54 Ohio St.2d 279, 376, 376 N.E.2d 578.
 {¶ 17} The evidence supports the magistrate's decision. The father points to his gainful employment as a children's sports referee and his status as a college student. He also says he is addressing his domestic violence and substance abuse issues. While these are laudable efforts, the magistrate evidently decided they are not enough. She heard credible testimony that both the father and the mother are currently unable to care for T.U. properly. The great-grandparents want to care for him, and they are approved to do so. While there is some evidence that they have questionable racial attitudes, this does not pose an immediate risk to T.U., and it is outweighed by evidence of immediate risks he would face with either parent. The fact is, there were no other options presented, so at least right now, the court *Page 6 
decided, living with his great-grandparents is in T.U.'s best interest. Competent, credible evidence supports this decision, and the decision falls within the bounds of discretion. Thus, we overrule the second assignment of error.
 {¶ 18} The judgment of the lower court is affirmed.
GRADY and FROELICH, JJ., concur. *Page 1